# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 03-3581

DARNELL WILSON,

*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:97-CR-0007(08) RM—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED MAY 9, 2005—DECIDED JULY 1, 2005

———————

**Before** POSNER, EASTERBROOK, and EVANS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* The Supreme Court held in *Johnson v. United States*, 125 S. Ct. 1571 (2005), that a state court's order vacating a conviction that had been used to enhance a federal sentence is a new "fact" that starts a one-year period in which to seek collateral review of the federal sentence. See 28 U.S.C. §2255 ¶6(4). That rule has a proviso: the petitioner "is obliged to act diligently to obtain the state-court order", 125 S. Ct. at 1582, and *Johnson* holds that an unexplained 21-month wait is not "diligent" as a matter of law. We must apply these princi-

ples to Darnell Wilson's situation. Acting before *Johnson*, the district court held that Wilson took too long and dismissed his collateral attack. *Johnson* leads to the same outcome.

In August 1997 Wilson pleaded guilty to being a member of a drug-distribution conspiracy. See 21 U.S.C. §846. He asked the district judge to defer sentencing so that he could challenge a state conviction for battery that increased his criminal history score and hence his presumptive sentence under the Sentencing Guidelines. With the state conviction, which had been based on a guilty plea, Wilson's range was 262 to 327 months; without it, the range would have been 235 to 293 months. The district judge gave Wilson time to file a collateral attack in state court, but within a week the state judge declined to disturb the conviction, and Wilson did not appeal. In March 1998 the district judge sentenced Wilson to 168 months' imprisonment, departing downward on the prosecutor's motion to reward Wilson's assistance in other cases.

In June 1998 Wilson tried again in state court, and again his collateral attack was rejected. In March 2000 Wilson hired a lawyer, who filed a third state collateral proceeding on June 12, 2001. This petition was granted the next month, and the state judge "expunged" the battery conviction, stating that Wilson "should not have been convicted of the offense" but not explaining why or elaborating on whether the state could reopen the prosecution in quest of a proper conviction. On January 16, 2002, the prosecutor abandoned that possibility by dismissing the charge. In November 2002 Wilson wrote a letter to the federal probation department, asking it to "correct" his presentence report. His reply came from an Assistant United States Attorney, who informed Wilson that this could not be done except through the judge, and that the appropriate device would be a petition under §2255. With this advice in hand, Wilson did nothing for another six months. On May 27,

2003, he filed what he captioned a "Motion to Recall Judgment", which the district court treated as a §2255 motion and denied as untimely.

A straightforward application of *Johnson* vindicates this decision. The state judiciary vacated the battery conviction in July 2001, and Wilson did not commence his federal collateral attack until May 2003, substantially more than the year allowed by §2255 ¶6(4) following newly discovered facts. If we treat the possibility of revising the prosecution as leaving matters unresolved, the prosecutor's formal dismissal closed the books on the state case. By January 2002 it was established that Wilson no longer had, and never would re-acquire, the battery conviction. At this point he had a year to commence a federal collateral attack but took 17 months to file anything in federal court.

This court recruited counsel to assist Wilson on appeal, and his new lawyers have essayed a number of reasons why the delay should be excused. One is that the district judge failed to warn Wilson, before treating the "Motion to Recall Judgment" as a collateral attack, that this would use up the only collateral proceeding allowed as of right. See *Castro v. United States*, 540 U.S. 375 (2003). But what difference could this make? Wilson's problem is that he waited too long, not that he filed too many collateral attacks. A warning would have led either to the motion's withdrawal or to its conversion; in either event Wilson would lose.

Counsel's second reason is that the lawyer who represented Wilson in the state collateral proceedings failed to tell him what to do in federal court after the state court expunged the conviction; there is a hint that counsel may not have told Wilson about the favorable decision for some time (though he learned about it no later than January 2002, when the charges were dismissed). We may suppose that the lawyer goofed, but the question for federal purposes is when Wilson learned about the new "fact"

rather than when he recognized its legal significance. See *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Notice to counsel is notice to the client, just as in other civil litigation. Because the sixth amendment does not guarantee quality (or any) counsel in post-conviction proceedings, the doctrine of ineffective assistance does not apply and lawyers' errors do not support relief. See, e.g., *Coleman v. Thompson*, 501 U.S. 722, 752-54 (1991); *Johnson v. McBride*, 381 F.3d 587, 589-90 (7th Cir. 2004).

Perhaps recognizing that the delay between January 2002 and May 2003 scuppered their client's position, Wilson's appellate counsel repaired to state court after they took over his case. They asked for *another* order setting aside his battery conviction, and the judge obliged. This new order, issued on September 23, 2004, the same day counsel filed the motion, reiterates the relief (expungement) and adds a reason: Wilson told the state judge that he could not have committed the battery because he was in prison on the date given in the information. Wilson now contends that the year allowed by §2255 ¶6(4) and *Johnson* runs from September 2004.

The September 2004 order could not be a newly discovered "fact" for purposes of §2255 ¶6(4) without eviscerating the federal statute of limitations. If all a petitioner must do to extend the time to seek federal relief is get the state court to reenter (or restate the reasoning behind) an order, then the year becomes infinitely extensible. The Supreme Court worried in *Johnson* that classification of vacatur as a "fact" would disrupt the federal system of limitations, and it designed the diligence proviso to curtail the amount of time that could be added by the process of seeking relief in state court. See 125 S. Ct. at 1582 & n.8. Cf. *Rhines v. Weber*, 125 S. Ct. 1528 (2005). For the same reason, when a petitioner obtains multiple, but substantively identical, orders from state court, the "fact" that starts the federal period is the first of these orders. This is a commonplace in

federal litigation. For example, a federal district judge cannot extend the time to appeal by vacating and reentering a judgment. *FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206 (1952); *United States v. Mosley*, 967 F.2d 242 (7th Cir. 1992). Likewise, a state judge cannot extend the time to file a federal collateral attack by vacating and reentering a judgment.

Wilson responds that the September 2004 order is not just the July 2001 order with a new date stamp but is a valuable clarification. That's off the mark: the state judge added a reason but did not change or clarify the *relief*. Not since July 2001 has Wilson's criminal record included the battery conviction that raised his federal sentencing range (and thus raised the benchmark from which the federal judge departed downward to reward his assistance). The conviction had been expunged and no longer counted for federal purposes. The reason given in July 2001 (that Wilson "should not have been convicted") was sketchy but enough to show that this was not the sort of expungement that federal law ignores. An expungement that reflects completion of a sentence, passage of time, or clemency does not affect the federal criminal history, but an expungement based on innocence or procedural irregularity does. See U.S.S.G. §4A1.2(j) Application Notes 6 and 10. And not since January 2002 has there been any possibility that Wilson's criminal record would ever again have such a conviction.

Anyway, if we were to view the September 2004 order as a new "fact" under §2255 ¶6(4), a diligence question would remain: why did Wilson wait 38 months to ask the state tribunal for this revision? *Johnson* holds that an unexplained 21-month delay is too long; an unexplained 38-month delay also must be too long. Counsel asks us to remand so that an explanation may be supplied, but a remand would be appropriate only if there were an explanation on offer but in need of record support. Yet neither

Wilson nor his former lawyer has offered any reason, though that would have been easy to do if one were available. There is no factual dispute to explore, no proposition to substantiate with proofs; and, as we concluded above, the September 2004 order is irrelevant to begin with because it does not alter Wilson's criminal history.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*