In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-3657

DEMETRIUS G. JACKSON,

*Plaintiff-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 98 CR 6—**Allen Sharp**, *Judge*.

ARGUED MAY 10, 2006—DECIDED SEPTEMBER 8, 2006

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges*.

BAUER, *Circuit Judge*. On July 30, 1999, Demetrius G. Jackson was sentenced 262 months' imprisonment as a career offender under U.S.S.G. § 4B1.1. Nearly five years later, he succeeded in reducing one of the predicate state convictions for this enhancement from a felony to a misdemeanor. He then brought before the district court this collateral attack on his federal sentence, which is, substantively, a motion under 28 U.S.C. § 2255. Because Jackson had previously filed a § 2255 petition in 2000, and had no certificate of appealability (COA), the district court dismissed his petition. Finding ourselves without jurisdiction to hear his appeal or grant a COA, we affirm.

The facts of this case are not in dispute. On March 10, 1988, Jackson pleaded guilty in Indiana state court to criminal recklessness, a Class D felony under Ind. Code § 35-42-2-2. His plea agreement was structured so that, should he successfully complete a two year term of probation, the record of his conviction would be altered to reflect a class A misdemeanor, not the original felony. Jackson satisfied this condition, but his record was not automatically altered, and he did not address the matter with the Indiana court system for more than fifteen years. In the interim period, his criminal career proceeded apace.

On June 2, 1998, Jackson was convicted of both the simple possession of cocaine base, 21 U.S.C. § 844, and possession with the intent to distribute, 21 U.S.C. § 841. Because of questions regarding the classification of his 1988 conviction, however, the district court declined to apply the career offender provision under U.S.S.G. § 4B1.1. It imposed, instead, a term of 97 months' imprisonment. On direct appeal, Jackson contested certain elements of his trial, and the government cross-appealed the district court's refusal to impose the § 4B1.1 enhancement. Reasoning that he "was initially charged with attempted murder, but pled guilty to 'Criminal Recklessness, a Class D Felony,'" we concluded that Jackson's conviction was clearly a crime of violence. *United States v. Jackson*, 177 F.3d 628, 632-33 (7th Cir. 1999). When paired with his 1993 conviction for reckless homicide, there was no question that he was a career offender within the meaning of § 4B1.1. We affirmed the conviction and vacated and remanded the sentence. *Id.* at 633.

On July 30, 1999, the district court resentenced Jackson consistent with our ruling. Applying the § 4B1.1 enhancement, the court set his term at 262 months' imprisonment. Jackson filed no direct appeal from the judgment.

Following his resentencing, Jackson sought to amend his Indiana state court record and reduce his federal sentence. Towards this end, he retained three separate attorneys between 1999 and 2001, including his initial trial counsel. Additionally, on March 13, 2000, he filed a pro se petition attacking his federal sentence under 28 U.S.C. § 2255. In the petition, Jackson alleged, *inter alia*, that he was denied his right to due process, confrontation, and effective assistance of counsel. To support these claims, he attached an exhibit detailing correspondence with his trial attorney, James Korpal. The letter stated ". . . I want you to file for my appeal and file for sentencing correction because my state case is a class A misdemeanor so no matter what happen [sic] this case can't be used." Tr. Rec. 115, Ex. A. This letter was dated September 15, 1999.

Additionally, Jackson filed numerous pro se motions in conjunction with this § 2255 petition. One of these was a request to stay the federal proceedings so as to pursue a post-conviction action in state court. The state court action, he noted, determined whether "he qualified for the status of Career Criminal." Tr. Rec. 125 at 2. In its reply, the government addressed Jackson's claims regarding the use of the state court conviction to enhance his federal sentence. Following a full and complete review of the record, the district court denied the § 2255 petition and all related motions on July 18, 2000. Again, Jackson filed no appeal from the judgment.

Jackson did not re-address the matter of his state court conviction until May 22, 2002, when he prepared a petition for post-conviction relief from his 1988 conviction. He did not file this petition in the Indiana state courts until May 28, 2003, nearly four years after his federal resentencing. And it was not until May 7, 2004, following the state court's grant of permission to proceed in forma pauperis, that Jackson filed a writ of habeas corpus to correct his sentence. The Indiana court granted relief that

day, and reduced the record of Jackson's to a class A misdemeanor.

With his state court record amended, Jackson again challenged his federal sentence by collateral attack. On August 9, 2004, with § 2255 no longer available, he filed an action in the Northern District of Indiana captioned: "Motion to Reopen, Reduce and Resentence Petitioner to 18 U.S.C. § 3559(c)(7); and Writ of Error Corum [sic] Nobis." In its reply, the government argued that the motion was a second or successive petition under § 2255, which required, but did not have, a certificate of appealability (COA). On September 27, 2004, the district court concluded that Jackson's filing was such a creatively captioned successive motion and denied relief. In a subsequent motion filed with the district court, docketed as a Notice of Appeal, Jackson asserted that the court's September order denying relief was a "clear error of constitutional law, as well as the congressional mandate in regards to [18 U.S.C. § 3559(c)(7)]." Tr. Rec. at 143. This appeal followed.

Jackson argues now that, primarily, his right to relief is not premised on constitutional error, which would require a certificate of appealability from this court for a successive § 2255 petition. But, instead, that it is one of "changed circumstances," and that he has a manifest right to challenge the "mechanical" application of his sentence in light of this change. The appeal from the district court's dismissal is properly before us, he argues, under 18 U.S.C. § 3742(a)(2), which provides: "A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines."

Following a preliminary review of his novel claim, this court issued a minute order acknowledging this "changed circumstances" argument, and allowed the matter to proceed to briefing. Jackson interpreted this order as a full endorsement of his motion, and, under Circuit Rule

57, sought to have the district court modify its judgment. On August 3, 2005, the district court declined to do so. In full briefing and at oral argument, Jackson raised not just his "changed circumstances" claim, but also argued that, in the alternative, the facts of his case satisfy the § 2255 requirements to warrant a COA.

We review first Jackson's claim that his appeal is properly before us pursuant to 18 U.S.C. § 3742. At the outset, we note that this Circuit has never offered § 3742 as an avenue to review the denial of a collateral attack; it has always been considered a route for direct appeal. *See, e.g.*, *United States v. Rand*, 403 F.3d 489, 493 (7th Cir. 2005); *United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003). Indeed, Jackson acknowledges this much in his brief, and he can point to no law from this, or any of our sister circuits, to support his novel jurisdictional claim. But it is this interpretive consistency that Jackson attempts to turn to his advantage, to wit, because § 3742 has never been employed in a collateral attack such as his, we have never explicitly held it ineligible for such a purpose. The consistent application, however, stems from the plain meaning of the statutory language: the defendant may file a notice of appeal where the sentence "was *imposed* as a result of an incorrect application of the sentencing guidelines." § 3742(a), (a)(2) (emphasis added). In this case, Jackson does not appeal from the 1999 imposition of his sentence, but the 2004 rejection of his collateral attack.

The only prior legal consideration in which Jackson claims support for his argument is a brief bit of reasoning in *United States v. Ruiz*, 536 U.S. 622 (2002). There, appellant Ruiz challenged the district court's failure to grant a downward departure under § 3742. In considering Ruiz's claim under § 3742(a), the Supreme Court first evaluated the merits of her argument to determine the validity of its jurisdiction on appeal, reasoning that "it is a familiar law that a federal court always has jurisdiction to

determine its own jurisdiction." 536 U.S. at 628 (citing *United States v. Mine Workers*, 330 U.S. 258, 291 (1947)). It is this reasoning upon which Jackson relies, but in doing so he confuses the issue. There is no doubt that we have jurisdiction to determine our own jurisdiction. The pertinent question is whether we have jurisdiction to hear his appeal. Perhaps the most informative fact from *Ruiz* is that the case was before the Supreme Court on direct appeal, not after a collateral attack.

Jackson also submits that if we reject § 3742 as an alternate avenue for relief, its overlap with 28 U.S.C. § 1291 would render the provision mere surplusage. This interpretation, however, ignores the difference between a general grant of jurisdiction and a statute governing the precise form in which that jurisdiction may be exercised. Section 1291 provides that the courts of appeals shall have the jurisdiction to hear "appeals from all final decisions" of the federal district courts. In contrast, § 3742 provides the specific circumstances in which those appeals may be heard from criminal sentencing. Employing this language as it was intended by Congress in the Sentencing Reform Act of 1984, *i.e.*, for § 3742 to inform and execute 18 U.S.C. § 1291 within the criminal context, will hardly render either section surplusage.

Further, when considering Jackson's argument for an implied avenue of jurisdiction under § 3742, we find informative the Supreme Court's reasoning in *Custis v. United States*, 511 U.S. 485, 492 (1994). There, Custis, who received an enhanced sentence under the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e) (ACCA), challenged two of his predicate state court convictions in the federal district court as having been obtained in violation of his constitutional right to effective assistance of counsel. *See Custis*, 511 U.S. at 487-90. He brought this collateral attack under § 924(e), which, he argued, provided an "implied right" to challenge the conviction. *Id.* at 491. The Supreme

Court, however, found that the ACCA offered no such implied jurisdiction. *Id*. 490-91. It reasoned that where Congress intended to authorize collateral attacks, "it knew how to do so." *Id*. at 492. Similarly, Congress provided no such express avenue for the review of collateral attacks in § 3742. We find, therefore, that Jackson's attempt to demonstrate the requisite appellate jurisdiction under this statute fails.

In truth, Jackson's inventively captioned motion is, substantively, a successive petition under 18 U.S.C. § 2255.

> Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 ¶ 1, is a motion under § 2255, no matter what title the prisoner plasters on the cover. *See, e.g.*, *Ramunno v. United States*, 264 F.3d 723 (7th Cir. 2001). Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, *coram nobis*, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit, bill of review, writ of error, or an application for a Get-Out-of-Jail Card; the name makes no difference. It is substance that controls. *See Thurman v. Gramley*, 97 F.3d 185, 186-87 (7th Cir. 1996).

*United States v. Lloyd*, 398 F.3d 978, 979-980 (7th Cir. 2005) (emphasis added) (quoting *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004)). The argument that his sentence was an incorrect application of the Guidelines in light of his "changed circumstances," and that he is thus serving a term beyond that required by law, falls withing the ambit of § 2255 ¶ 1. *See id*. at 980; *see, e.g.*, *Johnson v. United States*, 544 U.S. 295 (2005) (denying petitioner's § 2255 motion challenging a § 4B1.1 enhancement after having the predicate state convictions vacated). Further, Jackson himself acknowledged the constitutional basis of his claim in his filings before the lower court.

The district court's decision to dismiss Jackson's motion as a successive § 2255 petition in want of a COA was, therefore, proper.

As we have noted before, an appeal from an order denying a § 2255 petition as second and successive, filed without a COA, may be treated as a request for a COA. *See Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996). But Jackson's claim does not meet the criterion necessary to grant such a request. In *Hope v. United States*, we held that "a successive motion under 28 U.S.C. § 2255 . . . may not be filed on the basis of newly discovered evidence unless the motion challenges the conviction and not merely the sentence." 108 F.3d 119, 120 (7th Cir. 1997); *see* § 2255 ¶ 8. Here Jackson does not even challenge his culpability in the action leading to the predicate conviction. Instead, his amended state record merely recharacterizes the offense. This falls far short of the necessary showing for the relief he seeks.

Jackson argues, however, that pursuant to *Johnson v. United States*, we should consider his amended state court record a new "fact" granting him a one-year period in which to collaterally attack his federal sentence. *See* 544 U.S. 295; *see also, Wilson v. United States*, 413 F.3d 685, 686 (7th Cir. 2005). But this argument ignores the plain fact that *Johnson* was before the Supreme Court on appeal from the petitioner's *first* § 2255 motion. Furthermore, Jackson is unable to demonstrate *Johnson's* required diligence in obtaining the state-court order that vacated his predicate conviction. 544 U.S. at 310. There, an unexplained 21-month delay was fatal to petitioner's claim of diligence. See 544 U.S. at 310-11. Comparably, Jackson tarried for nearly three years between the rejection of his initial § 2255 motion and the filing of his petition for post-conviction relief in the Indiana state court.

Finally, we take a moment to address Jackson's claim that his right to challenge his enhanced sentence is "mani-

fest." App. Br. at 14. While it is true that our jurisprudence is replete with general reasons why a defendant may challenge his sentence, we have never held the right to such challenges is without limit, as his use of the word "manifest" seems to imply. Indeed, Jackson's argument ignores the strictures placed on our jurisdiction by the Antiterrorism and Effective Death Penalty Act of 1996, under which§ 2255 was most recently amended. Moreover, each case upon which he relies to support this claim to a "manifest" right address appeals either from a denial of a timely filed initial § 2255 motion, or directly following the imposition of a sentence. *See* App. Br. at 14-15.

For the foregoing reasons,[1] the decision of the district court is AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[1] Jackson waived any basis for relief under § 3559(c)(7) or the writ of coram nobis in his reply brief.