# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-1778, 08-2487 & 08-2090

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLINT WOODS, STEVE BENNETT
and DAVID MCDONALD,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, South Bend Division.
Nos. 00 CR 14 & 00 CR 35—**Robert L. Miller, Jr.**, *Chief Judge*.

ARGUED DECEMBER 4, 2008—DECIDED SEPTEMBER 9, 2009

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. This is a consolidated appeal of the denial of three defendants' motions to modify their sentences pursuant to 18 U.S.C. § 3582(c)(2). All three defendants were indicted, along with others, on multiple charges in a drug trafficking ring and entered into plea agreements that included appellate waivers. The government maintains we should dismiss the appeals

because the waiver bars our review. Because we conclude that § 3582(c)(2) motions do not fall within the waiver's scope, we hold that the waivers do not bar the defendants' appeals of the denials of their § 3582(c)(2) motions. However, because we conclude that the district court did not err in denying the motions, we affirm.

## I. BACKGROUND

Clint Woods pled guilty to conspiracy with intent to distribute crack cocaine in violation of 21 U.S.C. § 846 on May 24, 2000. On December 8, 2000, the court sentenced him to 235 months' imprisonment and three years' supervised release. Steve Bennett pled guilty to conspiracy with intent to distribute crack cocaine in violation of § 846 on December 17, 2001. On April 26, 2002, the court sentenced Bennett to 210 months' imprisonment and five years' supervised release.

The government moved to reduce Woods's and Bennett's terms of imprisonment, and the court granted the motion on September 3, 2003, reducing each of their sentences to 168 months. Woods and Bennett had already received other sentence reductions, and additional counts against them had been dismissed in exchange for their cooperation with the government.

David McDonald pled guilty to conspiracy with intent to distribute crack cocaine in violation of § 846 on August 3, 2000. On December 19, 2000, the court sentenced McDonald to 235 months' imprisonment and five years' supervised release. Upon the government's motion, the

court reduced his sentence to 188 months' incarceration in June 2003.

The presentence report ("PSR") for each defendant concluded that each was responsible for distributing more than 1.5 kilograms of cocaine base or more than 150 kilograms of cocaine powder. The court adopted the PSR report and made no other specific findings as to the drug quantities attributable to each defendant. Each PSR explained that from 1992 to 1998, the entire conspiracy distributed about 345 kilograms of crack and about 230 kilograms of powder, but it did not attribute a specific amount to Woods, Bennett, or McDonald other than more than 1.5 kilograms of crack.

The United States Sentencing Commission amended the guidelines effective on November 1, 2007, lowering the penalties for most crack cocaine offenses by two levels to ameliorate the 100 to 1 drug-quantity ratio between crack cocaine and powder cocaine as found in § 2D1.1 of the United States Sentencing Guidelines. *See* U.S.S.G. app. C, amend. 706 (2007). The Commission made some technical changes to § 2D1.1 with Amendment 711. U.S.S.G. app. C, amend. 711 (2007). The Commission made the amendments retroactive to cases sentenced before the amendments' enactments. Because the court sentenced Woods, Bennett, and McDonald before enactment of the amendments, they each filed § 3582(c)(2) motions.

The district court denied Woods's motion because it concluded that Amendments 706 and 711 to the guidelines do not apply retroactively to a defendant who

possessed with intent to distribute other drugs in addition to crack. The district court denied Bennett's and McDonald's motions because it concluded that each were accountable for more than 4.5 kilograms of cocaine base, and the amendments did not change the base offense level when quantities that great are involved. Woods, Bennett, and McDonald appeal the denial of their § 3582(c)(2) motions.[1]

## II. ANALYSIS

### A. The defendants did not waive their right to appeal the denial of their § 3582(c)(2) motions.[2]

Before potentially reaching the merits of the defendants' arguments that the court erred in denying their § 3582(c)(2) motions, we must determine whether to dismiss these appeals because each defendant entered into a plea agreement containing the following waiver:

> I further expressly waive my right to appeal my sentence on any ground, including any appeal right conferred by Title 18, United States Code 3742. I also agree not to contest my sentence or the manner in which it was determined in any

---

[1] Chief Judge Miller presided over each defendant's § 3582(c)(2) proceedings, as well as McDonald's sentencing and change of plea hearing. Judge Sharp presided over Woods's and Bennett's sentencing and change of plea hearings.

[2] While this opinion was at the printer, our court decided *United States v. Monroe*, No. 08-2945 (7th Cir. Sept. 1, 2009), which is consistent with our reasoning here.

post-conviction proceeding, including, but not limited to a proceeding under Title 28, United States Code § 2255.

The defendants maintain that a § 3582(c)(2)[3] motion is not an attack on the original sentence, but rather a request to modify an originally correct sentence based on amendments to the sentencing guidelines. Therefore, they maintain the plea did not bar their motion or this appeal. The government contends we must dismiss the appeal because the waiver bars any manner of appellate review. At oral argument, the government acknowledged that it did not assert waiver in the district court in response to any of the defendants' § 3582(c)(2) motions. The government explained that the United States Attorney's Office for the Northern District of Indiana had a policy allowing prosecutors to forego enforcement of sentence-challenging waivers in § 3582(c)(2) motions

---

[3] 18 U.S.C. § 3582(c)(2) provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

before the district court, but that it asserts waiver if a defendant attempts to appeal the district court's decision.

We review the enforceability of a waiver agreement de novo. *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999). It is well-settled that appellate waivers in plea agreements are generally enforceable. *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003); *see United States v. Nave*, 302 F.3d 719, 720-21 (7th Cir. 2002). "But [an appellate waiver] does not, in every instance, foreclose review." *United States v. Mason*, 343 F.3d 893, 894 (7th Cir. 2003) (internal quotation marks and citation omitted). For the waiver to be enforceable, the disputed appeal must fall within its scope. *See United States v. Vega*, 241 F.3d 910, 912 (7th Cir. 2001) (per curiam). We will enforce an appellate waiver if its terms are "express and unambiguous," *see United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997), and the record shows that the defendant " 'knowingly and voluntarily' " entered into the agreement. *United States v. Jemison*, 237 F.3d 911, 917 (7th Cir. 2001) (quoting *Jones v. United States*, 167 F.3d 1142, 1144 (7th Cir. 1999)).

To determine if a defendant knew and understood the plea agreement, we must examine the language of the plea agreement itself and also look to the plea colloquy between the defendant and the judge. *Woolley*, 123 F.3d at 632; *see also United States v. Sura*, 511 F.3d 654, 661 (7th Cir. 2007) (the district court must inform the defendant of an appellate waiver during the Rule 11 colloquy). A plea agreement is a type of contract subject to contract law principles, but limited by constitutional

considerations. *See United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). We interpret the terms of the agreement according to the parties' reasonable expectations and construe any ambiguities against the drafter—the government—and in favor of the defendant. *See Vega*, 241 F.3d at 912; *accord United States v. Stearns*, 479 F.3d 175, 178 (2d Cir. 2007); *United States v. Speelman*, 431 F.3d 1226, 1231 (9th Cir. 2005).

The waiver at issue does not include an express provision barring the filing of § 3582(c)(2) motions, as some plea agreements do. *See, e.g., Stearns*, 479 F.3d at 177; *United States v. Gordon*, 480 F.3d 1205, 1208 (10th Cir. 2007). Therefore, we must interpret the terms of the agreement to decide if this appeal falls within the scope of the waiver. *See Vega*, 241 F.3d at 912 (disputed appeal fell outside scope of appellate waiver because parties expected the term "sentence" in the waiver to include only the events of the sentencing hearing and not a later attempt by the court to amend the sentence).

Two of our sister circuits have addressed appellate right waivers following the denial of a § 3582(c)(2) motion, and both have concluded that the waivers at issue did not bar the appeals. In *United States v. Chavez-Salais*, the Tenth Circuit interpreted a broadly-worded waiver and concluded that appealing the denial of a § 3582(c)(2) motion did not fall within the scope of the waiver. 337 F.3d 1170 (10th Cir. 2003). The language of the waiver in *Chavez-Salais* was similar to the one at issue here, except in one aspect—that waiver barred the defendant from challenging his sentence in any "collateral attack" rather

than in any "post-conviction proceeding" as in our case.[4] *Id.* at 1172. The court determined that § 3582(c)(2) motions were not within the conventional understanding of collateral attacks because § 3582(c)(2) motions ask a court to modify a sentence pursuant to changes in the guidelines, but do not "complain about the substance of, or proceedings that determined, a defendant's original sentence or conviction" as other collateral attacks do. *Id.*

In *United States v. Leniear*, the Ninth Circuit also rejected the government's argument that the defendant's

─────────────────────

[4]  The waiver in *Chavez-Salais* stated:

> Defendant knowingly waives the right to appeal any sentence within the guideline range applicable to the statute of conviction as determined by the Court after resolution of any objections by either party to the presentence report to be prepared in this case, and defendant specifically agrees not to appeal the determination of the Court in resolving any contested sentencing factor. In other words, Defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, that the Court may depart upwards from the applicable sentencing guideline range as determined by the Court. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255, except to the extent that the court may depart upwards from the applicable sentencing guideline range.

337 F.3d at 1172.

appellate waiver precluded the court's review of the § 3582(c)(2) motion denial. No. 08-30199, 2009 WL 2216784, at *2 (9th Cir. July 27, 2009). The plea agreement in that case contained a waiver of the defendant's right to appeal the sentence pursuant to § 3742 and his right to collaterally attack his sentence.[5] *Id.* The district court denied Leniear's sentence-reduction motion because it concluded that Leniear was not eligible for a reduction under Amendment 706. On appeal, the *Leniear* court declined to dismiss the appeal because it concluded that the waiver barred only the defendant's right under § 3742 to appeal the sentence imposed at sentencing. *Id.* at *2. The court reasoned that Leniear was not appealing his sentence, but rather "the district court's conclusion that it lacked jurisdiction to modify his sentence." *Id.*

---

[5] The waiver in *Leniear* states in part:

> The defendant also understands and agrees that as consideration for the government's commitments under this plea agreement, and if the court accepts this plea agreement and imposes a sentence no greater than the maximum statutory penalties available for the offense of conviction, including any forfeiture under this plea agreement, he will knowingly and voluntarily waive his right, contained in 18 U.S.C. § 3742, to appeal the sentence—including all conditions of supervised release and forfeiture-imposed.

*Leniear*, 2009 WL 2216784, at *2. The plea agreement also contained language barring the defendant from collaterally attacking his sentence. *Id.* at *2 n.3.

Like the courts in *Chavez-Salais* and *Leniear*, we do not believe the waiver here bars the defendants' appeals. Neither the language of the waiver itself nor that of the colloquies demonstrate that the defendants contemplated waiving their right to appeal the denials of the sentence-reduction motions based on subsequent changes to the guidelines.[6]

We do not believe that § 3582(c)(2) motions contest the initially imposed sentence as precluded by the second sentence of the waiver. Rather, § 3582(c)(2) motions bring to the court's attention changes in the guidelines that allow for a sentence reduction. As the court said in *Chavez-Salais*, "[W]e do not believe that motions under 18 U.S.C. § 3582(c)(2) are clearly understood to fall within a prohibition on 'any collateral attack.' Defendant's motion under § 3582(c)(2) does not so much challenge the original sentence as it seeks a modification of

---

[6] We also note that a district court, on its own motion, may modify a defendant's sentence under § 3582(c)(2) even if a defendant agreed not to pursue any avenues of relief. *See* § 3582(c)(2) ("upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment"); *see also United States v. Taylor*, 520 F.3d 746, 748 (7th Cir. 2008) ("[T]he judge can do this on his own initiative, or on motion by the director of the federal bureau of prisons, without a motion by the defendant."). Although the government contends that the waiver bars modification of the sentence in any post-conviction proceeding, the waiver would not block a district court from reducing the sentence *sua sponte* in the appropriate situation.

that sentence based upon an amendment to the Guide-lines." 337 F.3d at 1173. Indeed, the defendants could not contest the district court's original sentence of imprison-ment through § 3582(c)(2) proceedings because § 3582(c)(2) provides no avenue through which to attack the original sentence. *See United States v. Lloyd*, 398 F.3d 978, 979-80 (7th Cir. 2005).

We also conclude that this appeal is not barred by the waiver's first sentence, which gives up each defendant's right to "appeal my sentence on any ground," including any right under 18 U.S.C. § 3742. The defendants have not appealed their originally imposed sentence, rather, they appeal the denials of their sentence-reduction motions because they believe the district court incor-rectly concluded that they were ineligible for a reduction. *See Leniear*, 2009 WL 2216784, at *2 (the defendant appealed the district court's denial of the sentence-modifi-cation motion, not the original sentence); *see also Jackson v. United States*, 463 F.3d 635, 638 (7th Cir. 2006) ("[T]his Circuit has never offered § 3742 as an avenue to review the denial of a collateral attack; it has always been con-sidered a route for direct appeal."). The district court here did not refuse to lower the defendants' sentences based on discretion, but rather based its determination on the conclusion that it did not have jurisdiction to do so because it believed the defendants' sentencing range was not lowered by the amendments. *See United States v. Poole*, 550 F.3d 676, 678 (7th Cir. 2008) (§ 3582(c)(2) limits the district court's subject matter jurisdiction). The waivers do not bar review of the district court's conclu-sion that it has no authority to grant a § 3582(c)(2) motion. *See United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir.

2000) ("[J]ust as we are willing to enforce waivers of appeal, we enforce them only to the extent of the agreement.").

We also reject the government's contention that even if the text of the waiver is not clear, the judge in each plea colloquy sufficiently explained that the defendants could not appeal the rulings. Although each judge ensured that the defendants entered into the plea agreements voluntarily and knowingly, they never made clear that the waiver precluded the defendants from pursuing § 3582(c)(2) motions if there was a subsequent amendment to the sentencing guidelines. In fact, neither judge mentioned § 3582(c)(2) proceedings at all. Although each explained that his sentencing decision was final and that the defendant could not complain about his decision to the appellate court, the judge was referring to the sentence being handed down at the sentencing hearing. When each judge explicitly described what rights the waiver encompassed, they focused exclusively on § 2255 motions and direct appeals. Based on the colloquies, it seems all present had the same conventional understanding of the term "post-conviction proceeding" as the *Chavez-Salais* court had of the term "collateral attack." *See Chavez-Salais*, 337 F.3d at 1174. The colloquies do not support the government's contention that the defendants contemplated waiving their rights to appeal the denial of a § 3582(c)(2) motion. *See United States v. Jones*, No. 08-13432, 2009 WL 1783994, at *1 n.1 (11th Cir. June 24, 2009) (unpublished opinion) (rejecting government's attempt to assert appeal waiver after defendant attempted to reduce his sentence under Amendment 706 because

the language of the waiver and the colloquy did not contemplate a "waiver of rights in the event of a retroactive guidelines amendment"). The government could have easily addressed § 3582(c)(2) in the text of the waiver, clearing up any ambiguity, but it did not do so. The defendants did not give up their right to appeal the district court's denial of their § 3582(c)(2) motions, and therefore we reach the merits of their appeals.

### B. A conviction for multiple drug types does not make Woods ineligible for a sentence reduction.

Woods challenges the district court's order denying his § 3582(c)(2) motion because it concluded that Amendment 706 is not retroactive for cases involving multiple drug types like Woods's which involved both crack and powder cocaine. We review the district court's application of sentencing guidelines de novo. *United States v. Samuels*, 521 F.3d 804, 815 (7th Cir. 2008).

As the government concedes, Woods is correct that he is now eligible for a reduction despite having been convicted of possessing multiple drug types. The court's order reveals that, in accordance with the amendments in effect at the time, it considered only Amendments 706 and 711, which retroactively reduced by two offense levels certain crack offenses and provided instruction on how to calculate the base offense level for offenses involving crack and another drug type. *See* U.S.S.G. Supp. to app. C, amends. 706, 711 (2007). The methodology for calculating the offense level for other drug types created

some bizarre results. *See, e.g., United States v. Molina*, 541 F.Supp. 2d 530, 532 (E.D.N.Y. 2008). The Sentencing Commission changed this with Amendments 715 and 716, which fixed some of the problems in applying the retroactive reduction to offenses involving multiple drug types, effective May 1, 2008. *See* U.S.S.G. Supp. to app. C, amends. 715, 716 (2008). The court denied Woods's § 3582(c)(2) motion on March 11, 2008, and the court's reasoning for denying the motion is no longer the proper analysis in light of the retroactive application of Amendment 715. *See* U.S.S.G. § 1B1.10(c).

Nevertheless, the government maintains we should find this error harmless because Woods was responsible for more than 4.5 kilograms of crack and therefore is ineligible for a reduction. Because this argument applies to all three defendants, we resolve this issue below.

### C. The district court did not err in finding the defendants ineligible for a reduction.

Each defendant's PSR explained that members of the conspiracy distributed approximately 345 kilograms of crack and approximately 230 kilograms of powder cocaine between 1992 and 1998. During the length of the conspiracy, kilograms of drugs were transported from Chicago to Michigan and Indiana almost every week. Each PSR also stated that the amount attributable to Woods, Bennett, and McDonald individually exceeded 1.5 kilograms of crack. The court adopted each PSR, specifically finding that each of the defendants was

responsible for amounts in excess of 1.5 kilograms of crack.[7]

In the denials of Bennett's and McDonald's § 3582(c)(2) motions, the district court concluded that the amendments did not benefit either defendant because each was responsible for more than 4.5 kilograms of crack cocaine and the base offense level does not change when such large quantities are involved. The defendants argue that this was a different factual finding than what was found by the original sentencing court, which, they contend, is not allowed in a § 3582(c)(2) proceeding.

The district court was correct that if the defendants were responsible for more than 4.5 kilograms of crack cocaine, the amendments do not benefit them. *See United States v. Forman*, 553 F.3d 585, 590 (7th Cir. 2009) (Amendment 706 "affects only defendants who are responsible for distributing fewer than 4.5 kilograms of crack cocaine"); *see also* § 3582(c)(2) (permitting a court to modify a sentence only "in the case of a defendant who has been sentenced to a term of imprisonment based on

---

[7] The government maintains that the court also found McDonald responsible for 150 kilograms of powder cocaine, making him ineligible for a reduction because this amount would place him at Level 38. We reject the government's argument on this point because the PSR states: "this defendant's criminal activity was distribution of more than 1.5 kilograms of cocaine base *or* more than 150 kilograms of cocaine powder." (emphasis added). We do not believe this is a finding of 150 kilograms of powder cocaine, but rather a restatement of what qualifies for an offense Level 38 in the guidelines.

a sentencing range that has subsequently been lowered by the Sentencing Commission").

We agree with the defendants that district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with that of the original sentencing court. *See United States v. Armstrong*, 347 F.3d 905, 909 (11th Cir. 2003) ("[A] motion to modify an otherwise final judgment pursuant to § 3582(c)(2) is a limited and narrow exception to the rule that final judgments are not to be modified.") (quotation marks omitted); *see also United States v. Adams*, 104 F.3d 1028, 1030-31 (8th Cir. 1997) ("[T]he sentencing guidelines direct a district court . . . to consider the sentence that it would have imposed had the amendment . . . been in effect at the time of the original sentencing. We think it implicit in this directive that the district court is to leave all of its previous factual decisions intact when deciding whether to apply a guideline retroactively.") (internal citations and quotation marks omitted).

Here, however, in denying the defendants' sentence-reduction motions, the district court did not make findings inconsistent with those of the original sentencing court. Rather, the district court examined the record as a whole, considered the defendants' motions, the government's responses, and the addenda to the PSRs explaining the conspiracy's distribution of hundreds of kilograms over the years before making a finding that the defendants were responsible for amounts in excess of

4.5 kilograms.[8] *See United States v. Atkinson*, 259 F.3d 648, 653 (7th Cir. 2001) (noting that the district court considered the parties' briefs and expanded record in considering the § 3582(c)(2) motion). District courts have broad discretion in how to adjudicate § 3582(c)(2) proceeding. *See United States v. Young*, 555 F.3d 611, 614-15 (7th Cir. 2009). We think the court did enough in this case. Here, the district court had the opportunity to review the entire record and received written arguments from both sides when considering the § 3582(c)(2) motions. Although a court may choose to hold a hearing, the district court in its discretion chose not to do so. *See id.* We cannot say the court abused its discretion, especially in light of the large quantity of drugs involved here—more than 300 kilograms above the 4.5 kilogram cutoff. *See United States v. Cunningham*, 554 F.3d 703, 707 (7th Cir. 2009). Had the original sentencing court found that the defendants were responsible for exactly 1.5 kilograms, we would have a different case, but a finding that the defendants were responsible for at least 4.5 kilograms is not inconsistent with the conclusion of the original sentencing court that the defendants were responsible for amounts in excess of 1.5 kilograms.

And there was ample evidence on the record to find each defendant responsible for more than 4.5 kilograms. The district court's sentencing memorandum for Woods

---

[8] McDonald also submitted a reply brief contending that the district court never found he was responsible for more than 4.5 kilograms.

discussed the hundreds of kilograms attributable to the conspiracy and stated that he did not challenge those figures. Bennett's PSR, which the district court adopted without objection, explained that he was involved in the conspiracy from 1992 to at least 1998. McDonald's PSR, also adopted without objection, described how he worked as a runner, delivering crack and money from 1992 to 1998. The conspiracy was clearly responsible for distributing amounts in excess of 4.5 kilograms over the years, and based on the record as a whole, the district court reasonably found that the defendants were responsible for more than 4.5 kilograms of crack each and, therefore, that they were ineligible for a reduction under Amendment 706.

## III. CONCLUSION

Therefore, we AFFIRM the district court's denial of the defendants' § 3582(c)(2) motions.