NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 9, 2010
Decided February 3, 2011

*Before*

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-2246

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     *Plaintiff-Appellee,* <br><br> v. <br><br> MONTEL GOINGS, <br>     *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 02-CR-200-7 <br><br> Wayne R. Andersen, <br> *Judge*. |

**O R D E R**

In 2005, Montel Goings pleaded guilty to one count of conspiracy to possess with intent to distribute more than 50 grams of cocaine base and more than 5 kilograms of cocaine within one thousand feet of an elementary school. *See* 21 U.S.C. §§ 841(a)(1), 860(a), 846; 18 U.S.C. § 2. The district court sentenced him to 174 months' imprisonment. After the Sentencing Commission amended the guidelines for crack offenses, Goings asked the court to reduce his sentence under 18 U.S.C. § 3582(c)(2). The court denied his request, and Goings appeals. Because Goings is ineligible for the reduction, we affirm the judgment.

**Background**

From 1994 through 2002, Troy Lawrence managed and controlled a large-scale drug operation in Chicago Heights, Illinois. The operation ran "seven days a week, 24 hours per day, selling approximately $10,000 to $20,000 worth of crack cocaine per day," which is the equivalent of 1,000 to 2,000 dime bags or at least 150 grams of crack per day. To achieve such a high volume of sales, Lawrence established a strict hierarchy for the 25 members of the organization, assigning each a specific role and coordinating their efforts. In 1997, Goings joined the operation as a packman, cutting down large pieces of crack cocaine and packaging the product for sale.

Goings was arrested in 2002, during a takedown of the operation by state and federal law-enforcement authorities. In his plea agreement, Goings admitted that:

> Initially, [he] packaged crack cocaine for the Lawrence drug operation three
> or four times a week. Eventually, [he] began packaging crack cocaine nearly
> every day. [He] would frequently package $10,000 worth of crack cocaine, or
> about 1,000 bags, in a single sitting. In total, [he] packaged well over 1.5
> kilograms of crack cocaine for the Lawrence drug organization.

Goings also occasionally helped deliver the drugs to "shift runners" at a spot near an elementary school where the product was sold. The description of the conspiracy included in his plea agreement confirmed that Goings attended periodic meetings that Lawrence called for members of the organization and that he understood the structure and scale of the operation.

After the district court accepted Goings's guilty plea, a probation officer prepared a presentence report, reiterating the facts sets forth above regarding the scale of the distribution scheme and Goings's role in the organization. Goings refused to discuss additional details of his involvement in the conspiracy with the probation officer, but he did not object to the findings in the report, which included the government's estimate that the Lawrence operation sold approximately 55 kilograms of crack per year. Because the offense involved more than 1.5 kilograms of crack, the probation officer calculated a base offense level of 38 under § 2D1.1(c)(1) of the Sentencing Guidelines. The probation officer applied a two-level increase because the offense was committed within 1,000 feet of an elementary school, *see* U.S.S.G. § 2D1.2(a)(1), and a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1. Goings's total offense level of 37 combined with his category III criminal history yielded a guidelines range of 262 to 327 months' imprisonment. At sentencing, the district court adopted these uncontested findings and sentenced Goings to

174 months, honoring the government's request for a sentence of two-thirds of the low end of the guidelines range based on Goings's substantial cooperation.

In 2005, when Goings was sentenced, 1.5 kilograms of crack was the threshold amount triggering the highest base offense level under § 2D1.1. Two years later, the Sentencing Commission modified § 2D1.1, reducing the offense levels for most crack offenses by two to address the crack/powder disparity for cocaine offenses. *See* U.S.S.G. supp. to app. C, 226-31 (2009) (Amendment 706). Under the amended version of § 2D1.1, a crack offense involving between 1.5 and 4.5 kilograms receives a base offense level of 36, and 4.5 kilograms of crack is the new threshold for the highest base offense level of 38. *Id.*

Goings moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), arguing that he was entitled to a two-level reduction based on Amendment 706. The government opposed his motion, responding that he was ineligible for the reduction because the record showed he was responsible for more than 4.5 kilograms of crack. In his reply Goings insisted that if the court read the "factual ambiguities" in his presentence report and plea agreement in his favor, it was possible to calculate that he personally packaged *less* than 4.5 kilograms. For example, where the plea agreement said he started working for Lawrence in 1997, Goings interpreted this as the last week of December 1997. And where it said he "frequently" packaged 1,000 bags per shift, Goings assumed it to mean he accomplished this only once every two months; on the remaining days, he assumed an average of only 25 bags per shift. Based on his strained interpretations of the record, Goings came up with a possible total of 4.410 kilograms—just shy of the new threshold amount.

The district court found Goings ineligible for the sentencing reduction and denied the motion. It did not address Goings's proposed calculations, but explained that "[t]he factual basis underlying defendant's offense shows that he was involved in the drug conspiracy and accountable for the distribution of well in excess of 4.5 kilograms." This appeal followed.

## Discussion

On appeal Goings primarily argues that the district court did not adequately explain its reasons for denying his § 3582 motion. Because his reading of the record could support a finding of less than 4.5 kilograms of crack, Goings insists that the court had to respond to his proposed calculations and resolve the "factual ambiguities" he identifies in the record. Goings also contends that the court's decision to reduce the sentences of two of his codefendants demonstrates that at least some conspirators were responsible for less than 4.5 kilograms and, thus, further comment is needed to account for the inconsistent rulings.

Because a district court's decision whether to modify under § 3582 is discretionary, we review the decision for abuse of discretion. *See United States v. Young*, 555 F.3d 611, 615 (7th Cir. 2009).

Like the standards established for initial sentencing determinations, when a district court rules on a § 3582 motion, it must provide a brief statement of reasons supporting its decision. *United States v. Marion*, 590 F.3d 475, 477-78 (7th Cir. 2009). A detailed exposition is not necessary, only "some minimal explanation" that will enable us to meaningfully review the court's exercise of discretion. *Id.* at 478. In denying Goings's motion, the district court explained that the factual findings in the record tied Goings to an extensive drug-distribution conspiracy and demonstrated that he was responsible for well over 4.5 kilograms of crack. Goings suggests that, because the court did not refer to specific portions of the record or provide a more precise explanation of how it reassessed the drug totals, we cannot have confidence in its conclusion. But the district court properly considered the record as a whole to determine whether Goings was eligible for a sentence reduction. *See United States v. Woods*, 581 F.3d 531, 538 (7th Cir. 2009). And, here, the court had before it a mountain of evidence detailing the huge volume of crack the Lawrence operation distributed. The uncontested facts and estimates included in Goings's plea agreement and his presentence report establish that he was involved in this conspiracy for four years, and during this time he worked almost every day as a packman, often packaging more than 150 grams of crack per shift. Under these circumstances, it is likely that Goings packaged more than 4.5 kilograms every two months, and a virtual certainty that he did so over the course of four years. *See United States v. Seymour*, 519 F.3d 700, 711 (7th Cir. 2008) (affirming sentences of Lawrence and six conspirators and noting that "an individual need not be involved in the [Lawrence] Organization for more than a couple of weeks to be a part of 1.5 kilograms of crack sales").

Still, Goings insists that it is possible to use the estimates in his plea agreement to come up with less than 4.5 kilograms of crack. But this is not a close case, and Goings's proposed calculations are not based on a reasonable reading of the facts. Most importantly, his calculations do not account for any additional quantities of crack that other members of the Lawrence organization produced and sold in furtherance of the conspiracy. For sentencing purposes, a defendant "convicted of a drug trafficking conspiracy is liable for the reasonably foreseeable quantity of drugs sold by his or her coconspirators." *Seymour*, 600 F.3d at 710-11. "Reasonable foreseeability refers to the scope of the agreement that [a defendant] entered into when he joined the conspiracy, not merely to the drugs he may have known about." *United States v. Hollins*, 498 F.3d 622, 630 (7th Cir. 2007). Thus, Goings was responsible not just for the amount he personally packaged for the Lawrence

operation, but for the foreseeable amounts attributable to his coconspirators. *See United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010); *Woods*, 581 F.3d at 538-39; *United States v. Martinez*, 518 F.3d 505, 509 (7th Cir. 2008). Based on very conservative estimates of the operation's daily output, the government explained that the Lawrence organization distributed at least 55 kilograms of crack each year. This means that, after four years, Goings would be liable for over 200 kilograms of crack, even if he did not personally package that amount. Goings has never argued that he was unaware of his coconspirators' activities or the extent of the distribution scheme, and, in any event, the admissions in his plea agreement would belie such contentions.

Finally, Goings places a great deal of significance on the fact that the district court granted the § 3582 motions for two codefendants. According to Goings, he is "similarly situated" to these codefendants and, thus, entitled to a reduction, too. But Goings overlooks the fact that, unlike in his case, the government did not oppose either of those § 3582 motions, and the court summarily granted both without reexamining the relevant drugs quantities. It is not clear why the government did not adopt a consistent strategy for all codefendants involved in the Lawrence organization, but any inconsistency in its litigation strategy is irrelevant to the outcome of Goings's motion. What matters here is whether the district court abused its discretion in denying Goings's § 3582 motion. Because there is ample evidence that Goings is responsible for well over 4.5 kilograms of crack, the court correctly determined that he cannot benefit from Amendment 706 and, thus, a sentence reduction was not authorized. *See* U.S.S.G. § 1B1.10(a)(2)(B); *United States v. Harris*, 567 F.3d 846, 855 (7th Cir. 2009). We see no reason to disturb the court's judgment.

AFFIRMED.